No. 80-121

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

LIN TUREMAN,

Petitioner and Respondent,

vs.

SALLY TUREMAN,

Appellant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable Joseph B. Gary, Judge presiding.
In and for the County of Gallatin.

Counsel of Record:

For Appellant:

Morrow, Sedivy, Olson and Scully, Bozeman, Montana

For Respondent:

Larry D. Whitman, West Yellowstone, Montana

Submitted on briefs: August 13, 1980

Decided DEC 16 1980

Filed: DEC 16 1980

_Thomas J. Kearney_

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Sally Tureman, the wife of Lin Tureman, appeals from the portion of a marriage dissolution decree entered by the Gallatin County District Court determining that she was not entitled to a share of the property accumulated by the husband since the parties' separation eight years earlier. She also appeals from the trial court's decision that she was not entitled to retroactive child support payments for the previous eight years. We affirm the judgment.

The focal point of the wife's contentions is two agreements entered into by the parties when they separated. One of these agreements gave custody of the parties child to the wife and required the husband to pay $75 per month in child support. The other agreement was a buy-out agreement where the husband would pay $22,400 to the wife for her share of the parties' major asset, a bar and restaurant in West Yellowstone. The wife contends the second agreement was not a property settlement agreement and should not have been recognized as such by the trial court. She further contends both agreements are unconscionable, and were entered into by means of fraud, duress and undue influence and are thus void. She requests one-half of the estate accumulated by the husband since the separation and asks that she be given back child support of $200 per month.

The parties entered into a common law marriage around 1957. There was one child born to the marriage, the child has since turned 18, joined the military and is financially independent. During the marriage, the couple earned a living through various means including gambling and dealing cards. In 1968, they borrowed money to acquire a liquor license and take a lease on a bar. Shortly afterwards, they

added a restaurant. In 1970, the parties separated permanently.

A contract dated April 15, 1970 was signed whereby the wife agreed to sell her interest in the bar-restaurant to the husband. The business was given a net value of $44,800. The husband agreed to pay the wife one-half of that amount in cash installments over the next four years at which time the wife would sign over to him her interest in the liquor license. He also agreed to assume responsibility for $50,000 in debts on the bar-restaurant and $10,000 in delinquent lease payments. By a second agreement also dated April 15, 1970, the wife assumed custody of the child and the husband agreed to pay the wife $75 per month for child support.

A Bozeman attorney assisted in preparing these agreements. Both parties vigorously assert that he was contacted first by the other party, and then acted solely on behalf of that party. The evidence does not support either side, however. The attorney was available and testified at trial. Relying mostly on his own records, he testified that he had represented the wife on previous matters, but in this case, he was not sure which party had contacted him first. He further testified that both parties had been part of the bargaining process, and the agreement had been rewritten a couple of times changing terms beneficial to both parties.

The trial court found that the husband did pay the $22,400 to the wife, and that in 1974, she signed over her interest in the liquor license to him. Since the time of separation in 1970, the wife has invested the money in a cafe, and later, a bar of her own. By the time of trial, however, she had either lost or given it all away. She was employed at several different jobs following the separation.

She was a truck driver, a waitress, and an assistant manager of a pizza parlor earning $1,000 per month. She was apparently unable to save any of her earnings. At the time of dissolution, she claimed only $1,600 worth of assets.

The husband, on the other hand, was more successful financially. He stayed in West Yellowstone and continued to operate the bar and restaurant. By the time of the dissolution, he had paid off most of his debts, had invested in a commercial fishing boat, and was making taxable income of $15,000 to $18,000 per year. The trial court found his assets to be worth $187,000.

The trial court found the wife was not entitled to a share of these assets. It found that the property had been equally divided when the parties separated and that the husband was entitled to all the property he had accumulated since that time. The wife was not forgotten, though. The trial court found that by reason of her background in the food and restaurant business, she would be able to make a living for herself with additional training as a chef. The trial court awarded her $600 per month while attending school for two years to become a chef. In addition to awarding maintenance, the court found that she was without sufficient funds to pay her attorney fees and ordered the husband to pay these fees.

The wife's first approach was to attack the agreements. She asserted before the trial court that the agreement to sell her interest in the bar-restaurant was not a marital property settlement agreement. She made similar assertion concerning the child custody and support agreement. Both agreements were, however, entered into with separation in mind and both accomplished what was expected to happen as a result of separation. These agreements were intended to

include a disposition of the marital assets. The wife did not prove otherwise.

The wife also attacks the property settlement agreement on the grounds that it is unconscionable, was signed under duress and undue influence, was fraudulently procured, and therefore void. The wife testified that she had been beaten several times before the parties separated and that she was in fear of further beatings. She testified that she signed the agreements out of fear of being beaten and because she felt she might lose her child. She further alleges she was denied counsel at that time. On this basis, she now contends that the trial court erred in not finding this agreement void. The husband refutes these contentions.

The agreement itself appears fair on its face. The trial court found that not only did the husband agree to pay the wife 50 percent of the net value of their assets, but he also assumed some $60,000 in debts on the business. The trial record does not establish fraud, undue influence, duress or unconscionability.

The next line of attack by the wife is her assertion that the trial court erred in not considering the factors set out in section 40-4-202, MCA, even though there was a pre-existing property distribution agreement and child custody and support agreement in effect. This statute allows the court to equitably divide the marital assets considering such things as the age, health, occupation, vocational skills, estate, and liabilities of the parties. But the effect of the separation agreement must be considered. Section 40-4-201, MCA, requires that the terms of the separation agreement be binding upon the court provided that the terms are not unconscionable. The trial court did not find the agreement to be unconscionable and

the record does not reflect an error in his failure to do so.

The trial court found that the major assets of the parties had been equitably divided in 1970 by agreement. It also found that the husband was entitled to his subsequent acquisitions of property and the appreciation in value due to inflation. The wife cannot now claim that she is entitled to a share of the husband's accumulated estate on the basis of their marriage. Since 1970, the marriage has only existed legally--the parties had long since gone their separate ways. The lapse of time from the separation to the dissolution does not give the wife rights she did not otherwise have. The trial court reviewed what happened in 1970, found that there had been fair dealings between the parties, and thus are bound by their agreements. A real estate salesman testified on the wife's behalf as to the current value of the bar-restaurant. The wife maintains that the trial court erred in not using that value in its findings, but rather accepting the lower value given by the husband. We note the salesman did only a quick appraisal. He failed to consider the property interest as only a lease-hold interest expiring in 1981, and he did not examine the business records to determine the profit potential. Moreover, assuming error in valuation, the error is harmless because the trial court held that the wife was not entitled to any of the husband's property acquired after the separation agreement and separation.

Concerning child support, the wife assets that the trial court erred in failing to find that the husband owed back child support and failing to increase it retroactively from the time of separation from $75 per month to $200 per month. The wife had no complaints as to the adequacy of the

child support agreement during the eight year separation. Her claim for retroactive increased child support payments for the eight-year period is more than hollow. Furthermore, the trial court considered the wife's contention that the husband failed to make the $75 per month payments pursuant to the written agreement, but found that the evidence did not preponderate in favor of either party on this issue, and therefore denied her claim. The record supports this decision.

The judgment of the trial court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices