Robert B. STOCKTON,
Respondent-Appellant,

v.

Marilyn A. STOCKTON,
Petitioner-Appellee.

No. 1–1181A322.

Court of Appeals of Indiana,
First District.

May 27, 1982.

Rehearing Denied July 9, 1982.

F. Jefferson Crump, III, Jewell, Crump & Angermeier, Columbus, for respondent-appellant.

Maurice A. David, Sharpnack, Bigley, David & Rumple, Columbus, for petitioner-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Robert B. Stockton (Robert) appeals the provisions of a decree of dissolution of marriage relating to the division of marital property and the award of attorneys' fees to his wife's attorneys. We affirm.

## STATEMENT OF FACTS

Robert and Marilyn A. Stockton (Marilyn) experienced marital problems after twenty-six years of marriage and having reared three sons. Marilyn consulted her attorney in June of 1980. A separation agreement was prepared by her attorney and signed by her and Robert about June 30th. Robert was not represented by counsel at this time. Generally, this agreement provided that Robert should have the family residence together with the furnishings except that wife would remove reasonable amounts of furniture for her own use during the separation. The agreement made further provisions for Marilyn's maintenance, the use of a motor vehicle and the payment of taxes. In the event of dissolution of the marriage, the agreement provid-

ed for the selection of appraisers to determine fair market value of the residence and tangible personal property and prescribed a formula for determining the amount to be paid Marilyn by Robert. Such amount, at Robert's option, could be paid in cash or by a promissory note bearing interest at ten percent (10%) per annum, payable in equal monthly instalments amortized over a period of twenty (20) years and secured by a second mortgage on the residence.

Marilyn filed her dissolution action on September 3, 1980. On September 10th, a provisional order was entered granting Marilyn maintenance of $200.00 per month, the amount specified in the separation agreement, and $350.00 attorneys' fees. The dissolution action was tried on April 2, 1981, as a contested matter, Robert now being represented by counsel. At the trial, Robert proposed a settlement, based upon the agreement, which would have given Marilyn household goods of $3,800.00 and payments of $24,283.88, payable over a twenty-year period. Marilyn expressed dissatisfaction with the interest rate of ten percent (10%) as lower than current rates, and wanted payment in cash rather than in instalments payable over a twenty year period. The testimony further revealed some problems occurring when Marilyn sought to obtain certain items of furniture and household goods. There was no evidence indicating any fraud, misrepresentation, coercion, or lack of disclosure relating to the execution of the agreement.

On April 2, 1981, the court entered a decree dissolving the marriage but reserving judgment on the property division. Later, on June 5, 1981, the court entered its "Supplement to the Decree of Dissolution of Marriage" making an item by item division of the articles of personal property, with a specific value assigned to each item, awarding the real estate to Robert, and directing Robert to pay to Marilyn $26,-504.76 either within 30 days or by a note in that amount payable on or before nine (9) months from the date of the supplemental decree with interest at fifteen percent (15%). The supplemental decree further ordered Robert to pay an additional $1,567.00 for Marilyn's attorneys' fees.

ISSUES

1. Did the trial court abuse its discretion by failing to approve and incorporate the separation agreement into the dissolution decree?

2. Did the trial court abuse its discretion by awarding attorneys' fees in excess of the amount provided in the agreed provisional order?

DISCUSSION AND DECISION

*Issue One*

The underlying question with respect to this issue is to what extent, if at all, the court is bound by the parties' property settlement agreement.

Property settlement agreements in dissolution of marriage cases are encouraged. *Anderson v. Anderson*, (1979) Ind.App., 399 N.E.2d 391; *Flora v. Flora*, (1975) 166 Ind. App. 620, 337 N.E.2d 846, *reh. denied* 166 Ind.App. 631, 337 N.E.2d 852, *trans. denied* (1976). Our statute pertaining to such agreements, Ind.Code 31–1–11.5–10, provides:

"(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children.

(b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter.

(c) The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the

court except as the agreement itself may prescribe or the parties may subsequently consent."

Robert contends the trial court, absent a finding of unfairness, unreasonableness, fraud, or coercion, was bound to accept the agreement and incorporate its terms in the decree. On the other hand, Marilyn asserts the trial court was free to accept, reject, or modify the agreement as it saw fit relying upon Ind.Code 31–1–11.5–10(b) which provides either that the terms of the agreement if approved by the court shall be merged in the decree or that the court itself may make provisions for the disposition of property.

■ Our supreme court and this court have said that the trial court has the discretion to accept, modify, or reject, either in whole or in part, a property settlement agreement. *Meehan v. Meehan,* (1981) Ind., 425 N.E.2d 157; *Anderson v. Anderson, supra; Flora v. Flora, supra.* However, the question of whether or not there are any limitations upon the exercise of discretion in accepting, rejecting, or modifying such agreements has not been squarely faced before. However, such settlement agreements have been held to be presumptively valid. *Tomlinson v. Tomlinson,* (1976) 170 Ind.App. 331, 352 N.E.2d 785, *trans. denied; Flora v. Flora, supra.* The burden of persuasion as to factors militating against the presumption of validity rests upon the objecting party. *Flora v. Flora, supra.* Under our prior divorce law, it had been held that such agreements will usually be received in evidence and upheld and followed in the decree if fair, equitable, and just, *McHie v. McHie,* (1938) 106 Ind.App. 152, 16 N.E.2d 987, *trans. denied* (1939), and that the court in a divorce action has the right to consider any valid agreement between the parties which was introduced into evidence in determining property rights, although such agreement is not binding on the court. *Gray v. Miller,* (1952) 122 Ind.App. 531, 106 N.E.2d 709.

Robert relies primarily upon a decision of the Supreme Court of Vermont in *Strope v. Strope,* (1973) 131 Vt. 210, 303 A.2d 805, 809, wherein that court said:

"For the court to overturn the agreement, there must be evidence presented from which it can be concluded that the [agreement] was unfair, unjust and unreasonable and so found by the court. [citations omitted.] And the mere statement by the court that it is dissatisfied with the [agreement] is an insufficient basis for rejecting any of the terms of the agreement.

"In divorce proceedings a contract between husband and wife relating to alimony will be recognized and enforced if it appears to the court to be reasonable and fair to the parties and not collusive. [citations omitted.] The record must demonstrate a compelling reason for the court not accepting the [agreement] and a justification of its order." (Our insertions.)

Other cases from other jurisdictions have dealt with the question of the binding effect of the settlement agreement on the court. It has been held that such agreements, in the absence of fraud, are binding on the court and should be followed. *Adams v. Adams,* (1947) 29 Cal.2d 621, 177 P.2d 265; *Kline v. Kline,* (1979) 92 Mich. App. 62, 284 N.W.2d 488; *Lyall v. Lyall,* (1976) 240 Pa.Super. 649, 361 A.2d 367. This result was mandated by specific statutory provisions in some cases. *In re Marriage of Lorenzi,* (1980) 84 Ill.App.3d 427, 39 Ill.Dec. 754, 405 N.E.2d 507, relying upon Ill.Rev.Stat.1977, ch. 40, par. 502; *Tureman v. Tureman,* (1980) Mont., 620 P.2d 1200, relying upon § 40–4–201 M.C.A. *Morgan v. Morgan,* (1981) Tex.App., 622 S.W.2d 447, 450, holds a property settlement agreement must be approved by the trial court when it finds such agreement is fair, just, and equitable and free from coercion or undue influence.

On the other hand, some courts have held that a trial court is not bound by the terms of a property settlement agreement. *Wallace v. United States,* (8th Cir. 1971) 439 F.2d 757 (Iowa law); *Seal v. Seal,* (1980) Ala.Civ.App., 390 So.2d 639, *cert. denied* 399 So.2d 845; *Campanello v. Mason,* (1977)

Okl., 571 P.2d 449. However, it has also been said that while the court is not duty bound to carry out its terms, the agreement should be respected and given great weight, and that the trial court's decision will not be disturbed except for clear abuse of discretion. *Pearson v. Pearson*, (1977) Utah, 561 P.2d 1080. Further, it has been held that the trial court has authority to set aside a property settlement agreement, but in so doing, it must pronounce the terms thereof unconscionable. *Merritt v. Merritt*, (1981) Mo.App., 616 S.W.2d 585.

Another point of view advanced by some courts is that, as a general rule, property settlement agreements should be given effect if just and proper in the circumstances, *In re Mollier & Mollier*, (1978) 33 Or.App. 575, 577 P.2d 94, or if found fair and reasonable, *Zupancic v. Zupancic*, (1977) 48 Ill. App.3d 256, 6 Ill.Dec. 302, 362 N.E.2d 1124 (under former statute). *Accord Christian v. Christian*, (1977) 42 N.Y.2d 63, 396 N.Y.S.2d 817, 365 N.E.2d 849.

In the case of *Byrd v. Byrd*, (1975) Fla. App., 324 So.2d 659, 661, the court stated:

"We need not and do not hold ... that it is necessary for the court to find fraud, overreaching, or a change in circumstances before the trial court may modify a post-nuptial property settlement agreement. Clearly, a trial judge is vested with discretion to determine the fairness of these agreements in light of the evidence of the needs and abilities of the respective spouses before incorporating the agreement into a final judgment."

Nevertheless, the Florida court in *Byrd*, held the trial court abused its discretion in modifying the settlement agreement because (1) there was no evidence of unfairness or overreaching; (2) there was sufficient evidence of the husband's ability to comply; (3) there was abundant evidence of the wife's need; and (4) the wife had relied on the agreement and joined in a sale of property to assist the husband to pay his debts.

■ Although there is authority for the position and at least one writer has opined that a rule requiring the court to accept the agreement in the absence of fraud or duress is the better rule, H. Clark, Law of Domestic Relations, § 16.10, pp. 550–51 (1968), we are reluctant to bind the court completely, especially in view of the pronouncements of our supreme court and this court that the trial court has the discretion to accept, reject, or modify such agreements. *Meehan v. Meehan, supra; Anderson v. Anderson, supra; Flora v. Flora, supra.* Nevertheless, that such settlement agreements are to be encouraged is obvious from the language of our statute, Ind.Code 35–1–11.5–10, and our courts have recognized that such is indeed the intent and purpose of that legislation. *Anderson v. Anderson, supra; Flora v. Flora, supra.* However, we do not believe our legislature intended to vest trial courts in Indiana with the completely unfettered and uncontrolled discretion to reject property settlement agreements arbitrarily, capriciously, or by mere whim. Rather, we think the action of the trial court in accepting, rejecting, or modifying a property settlement agreement is reviewable as any other division of property. In reviewing the division of property, the issue is whether the trial court abused its discretion. *Cunningham v. Cunningham*, (1982) Ind.App., 430 N.E.2d 809; *Hasty v. Hasty*, (1981) Ind. App., 427 N.E.2d 1119, *trans. denied.*

■ Thus, while the trial court is not required to approve a property settlement agreement automatically, but has some discretion in that regard, such discretion must be exercised reasonably and upon a rational basis supported by the evidence. The trial court should not reject a property settlement agreement arbitrarily or based upon whim or because the court believes it could write a better agreement. Unless the record demonstrates some unfairness, unreasonableness, manifest inequity in the terms of the agreement, or that the execution of the agreement was procured through fraud, misrepresentation, coercion, duress, or lack of full disclosure, the court should not second-guess the parties, particularly where both are represented by counsel. For the court to reject or modify an otherwise fairly-entered-into and reasonable settlement

agreement where no rational basis for such action is supported by the record would be an abuse of discretion.

We do not, however, hold that the trial court must make special findings of its reasons for rejecting or modifying a settlement agreement, although it might be preferable to do so. This court in *Waitt v. Waitt*, (1977) 172 Ind.App. 357, 360 N.E.2d 268, held that the trial court is not required under either IC 31–1–11.5–10 or 31–1–11.5–11 to make specific findings of fact that a property settlement was fair and equitable, and made upon full disclosure, without fraud, duress, or undue influence. In view of that holding, we believe the converse also to be true. Nevertheless, we do hold that the record must support a rational basis for the court's rejection or modification of a property settlement agreement lest the court abuse its discretion.

 Here, the record reveals that not all of the property of the parties was covered with specificity in the agreement and that there was some difficulty when Marilyn sought to obtain certain articles. Further, the court could have found that extending the payment to Marilyn of some $24,000 over a twenty-year period at a low interest rate was unfair and unreasonable and that to require payment of $26,000 within nine months at a higher interest rate was equitable. Consequently, we cannot say there was no rational basis for the court's action in rejecting the agreement, and the court did not, therefore, abuse its discretion in so doing.

*Issue Two*

 Robert contends the court abused its discretion in awarding Marilyn's attorneys fees of $1,567.00 over and above the $350.00 provided for in the agreed provisional order. We disagree. In *Castor v. Castor*, (1975) 165 Ind.App. 520, 333 N.E.2d 124 at 127, we said:

"We recognize that preliminary or interlocutory fees awarded may not compensate for all time and services rendered to that time but such services as are not compensated by the preliminary fee

award are recoverable through a subsequent order or through the final decree. Such final decree may consider *all* legal services rendered during the course of the proceeding, place a value upon such services as are to be paid for by the opposing party, and may award a fee reduced by the amount of any preliminary fee awards assessed and paid...." (Original emphasis.)

Our statute relating to orders for attorneys' fees, Ind.Code 31–1–11.5–16, provides:

"The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name."

Here, Marilyn's attorney testified he had expended twenty-six hours up to the trial on this case, that his hourly rate was $60.00, and that he had been paid $350.00. The sole statutory guide in the assessment of attorneys' fees in dissolution cases is that the fees be reasonable. *Svetich v. Svetich*, (1981) Ind.App., 425 N.E.2d 191, *trans. denied*. Under the *Castor* holding, the court clearly could have determined that all the services of Marilyn's attorney were not compensated by the preliminary order and that additional fees were warranted. We cannot say the court abused its discretion in ordering Robert to pay the additional fees.

Judgment affirmed.

NEAL and ROBERTSON, JJ., concur.